UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONRICO DENHAM ,

        Plaintiff,

v.                                        Case No. 2:06-cv-74
                                       HON. ROBERT HOLMES BELL

KATHY AALTO, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Ronrico Denham, a prisoner confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Assistant Deputy Warden of Housing Kathy Aalto, Deputy Warden Robert Napel, Resident Unit Manager Ken Neimisto, Corrections Officer Heinzual, and Assistant Resident Unit Supervisor Victoria Weisinger. Plaintiff alleges that he was chained to his bed in retaliation because he wanted to file a lawsuit against defendants Napel and Neimisto. Plaintiff alleges denial of access to the courts and due process and equal protection violations. Plaintiff's complaint implicates his First, Sixth, Eighth and Fourteenth Amendment rights. Plaintiff alleges that this restraint sanction was authorized for two weeks and plaintiff was denied water and bathroom breaks. Plaintiff alleges that he was denied food and water by defendant Heinzual. Plaintiff alleges that this violated his religious beliefs. Plaintiff seeks to have the defendants fired from the MDOC, a declaratory judgment issued against defendants, injunctive relief, and over 50 million dollars in damages.

Presently before the Court is the defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants first argue that plaintiff's complaint should be dismissed for failure to totally exhaust grievance remedies. Defendants' argument has been soundly rejected by the United States Supreme Court. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *Jones*

*v. Bock*, 127 S. Ct. 910 (Jan. 22, 2007). *See also Booth v. Churner*, 121 S. Ct. 1819, 1823-24 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Booth*, 121 S. Ct. at 1823; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 121 S. Ct. 634 (2000); *Hartsfield v. Vidor*, 199 F.3d 305, 308 (6th Cir. 1999); *Wyatt*, 193 F.3d at 878-79; *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

In *Jones*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." The Supreme Court rejected a finding that the PLRA requires a prisoner to specifically name defendants in their grievances. Rather, the Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. Accordingly, exhaustion is satisfied if plaintiff complied with the grievance procedures of the Michigan Department of Corrections. Moreover, the burden is on defendants to show that plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. Exhaustion is no longer a pleading requirement. The Supreme Court also rejected total exhaustion, holding that when a defendant establishes lack of exhaustion as an affirmative defense, only the unexhausted claim may be dismissed. Plaintiff attached grievances to this complaint. It is apparent that plaintiff exhausted his grievances as required by the United States Supreme Court decision in *Jones*.

Plaintiff alleges that he was retaliated against because he wanted to file a lawsuit against some of the defendants. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him

that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff has made no showing that he engaged in any protected conduct prior to being placed on top of bed restraints. Plaintiff stated that he wanted to file a lawsuit against some of the defendants. Plaintiff has made no showing that defendants were aware of his subjective intention. More importantly, defendants have established that retaliatory conduct was not taken. Defendants have established that plaintiff was placed on top of bed restraints because of his own improper actions. Plaintiff caused over $1700.00 in damage to his cell. Plaintiff pulled his steel footlocker out of its floor anchor bolts and then used the footlocker to break his cell toilet, sink and bed. Plaintiff also damaged his cell wall. As a result, plaintiff was placed on top of bed restraints on November 12, 2004, where he remained until November 22, 2004.

Plaintiff alleges that he was subjected to excessive force when he was placed in top of bed restraints. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995). In numerous cases, the Sixth Circuit has held that restraints were penologically justified where in light of the inmate's disruptive behavior, the inmate continued to pose a threat. *See Hayes*, 1994 WL 28606, at *1 (significant threat of further destructive behavior justified application of top-of-bed restraints against inmate); *Harris v. Ohio Dep't of Rehab/Corr.*, No. 91-3920, 1992 WL 56999, at

\*2 (6th Cir. March 24, 1992) (requiring inmate to wear restraint belt during visits was penologically justified); *Boswell v. Vidor*, No. 89-2372, 1990 WL 143501, at \*1 (6th Cir. Oct. 2, 1990) (placing inmate in full restraints for twelve hours was justified where inmate had disobeyed a direct order by repeatedly refusing to return plastic gloves given to him for cleaning his cell); *Syncate-El v. Toombs*, No. 92-1421, 1992 WL 301270, at \*2 (6th Cir. Oct. 21, 1992) (use of body chains during non-contact visits was justified in light of significant threat of further assaultive behavior given inmate's history of disruptive behavior). *See Rivers*, 1995 WL 603313, at \*2 (top-of-bed restraints were appropriate even after inmate discontinued his earlier abusive, disruptive, and threatening behavior).

The restraints were justified under the circumstances of this case, because plaintiff caused extensive damage to his cell and then after he was restrained broke one of his restraints and threatened himself with harm. Under these circumstances, plaintiff cannot show that the restraints were excessive force. Moreover, plaintiff's assertions that he was denied food, water and bathroom breaks are not supported in the record. Rather, defendants have shown that plaintiff was monitored and given food, water and bathroom breaks. Plaintiff was monitored at 15 minute intervals by staff and visited by the shift commander twice during each shift. Plaintiff also had regular visits from medical staff. Plaintiff was provided food and his restraints were adjusted to allow plaintiff movement necessary to feed himself. In the opinion of the undersigned, plaintiff cannot show that his Eighth Amendment rights were violated.

Plaintiff alleges a violation of his right to access the courts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create

an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993). It is plaintiff's burden to demonstrate actual injury to pending or contemplated litigation. *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001). Plaintiff has failed to present any allegations or factual claims that could establish a violation of his right to access the courts.

Plaintiff alleges that his due process, equal protection and religious rights were violated by defendants. Plaintiff has not supported these assertions with any factual allegations other

than a statement that these rights were violated. In the opinion of the undersigned, plaintiff has failed to show that factual evidence exists to support these claims.

Defendants argue that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the

unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

- 9 -

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendants are entitled to the defense of qualified immunity.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motion for summary judgment. Accordingly, it is

recommended that defendants' motion for summary judgment (Docket #24) be granted and that this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: March 13, 2007